[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was tried before the Regional Family Trial Docket, on a referral from the Middlesex Judicial District, on December 9, 2002. The Plaintiff and Defendant testified and numerous exhibits were introduced. The court has considered all of the credible evidence presented to it and carefully considered the respective criteria for orders of custody, visitation and access, child support, health insurance, payment of children's medical expenses, alimony, property settlement, division of debt and award of counsel fees. The court makes the following findings of facts and orders:
The parties were married on November 9, 1996 at Kensington, Connecticut. The court finds that it has jurisdiction over the marriage. One of the parties has lived in the State of Connecticut for more than one year prior to bringing this action. The following minor child has been born to the parties since the date of the marriage:
Andrew Anthony Frederick Klein, date of birth, July 2, 1998
No other minor children have been born to the Wife since the date of the marriage. The parties are not receiving state assistance. The court finds that the marriage between the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.
The Wife is 36 years old and in relatively good health. She attended St. Thomas Aquinas High School and graduated in 1985. She attended Tunxis Community College and Central Connecticut State University without receiving a diploma. Ms. Klein was majoring in business. She is currently employed by Stop and Shop for an average of 14 hours a week and earns $10.75 per hour. Ms. Klein works from 10:00 p.m. or 11:00 p.m. until 6:00 a.m. two to three nights per week. She is also employed by Bethphage Group Homes, State of Connecticut, caring for mentally retarded adults. She works 24 hours per week and earns $11.02 per hour. Ms. Klein testified she is working these hours so she can be at home during the day CT Page 15750 to care for the couple's 4 1/2 year old son.
The Wife's prior employment included working for Benosite Insurance in North Haven, CT where she earned $35,000 per year as a medical claims adjuster (including overtime) prior to the birth of her child. She was briefly employed by CIGNA, from September 2000 to April 2001, working at home as a claims adjuster earning $23,000 to $25,000 per year. Ms. Klein claims it became too difficult to work from home while taking care of an active toddler; Mr. Klein claims the Wife was fired from this job for not meeting her quota.
The Husband is 34 years old and in relatively good health. He has been employed by Verizon Wireless in Wallingford, Connecticut for 4 1/2 years as a telecommunications analyst and earned $66,452.82 in 2001, including overtime and a bonus. The financial affidavit, submitted by the Husband at trial, indicated his total 2002 income will be $55,578.12. Prior to his employment with Verizon, Mr. Klein was employed by ATT. Mr. Klein is a high school graduate with additional on the job training in the telecommunications industry. The court finds that the Husband has far superior earning capacity than the Wife.
The family home is located at 10 Ridgebury Road, East Haddam, CT. The parties have stipulated to an appraised value of $250,000. The mortgage on the home is $140,722.91. Equity in the family home, without deducting closing costs, is $109,277.00. Ms. Klein testified the down payment for the family home came from an inheritance she received in the approximate amount of $5,000 to $6,000, 1/2 of the couple's cash wedding gifts (approximately $5,000) and proceeds from the sale of the Husband's car in the approximate amount of $7,500.00. The Husband testified that he also contributed an additional $10,000 of premarital savings. However, given that the original cost of the home, including upgrades, was $175,000 to $180,000, and the initial mortgage was $160,000, there is an amount of $12,500 to $7,500 which is unaccounted for.
The parties reached a shared parenting agreement after a pretrial with the Special Masters on September 12, 2002, which is incorporated by reference herein. Although this agreement has the minor child with the Husband twenty out of twenty-eight nights, the child spends more of his waking hours with his mother who has adjusted her work schedule, and is earning a reduced salary, to be home with the child when he is not attending preschool.
The Husband and Wife agree that the Wife had a spending problem during the course of the marriage that she hid from the Husband in a variety of ways. She rented a post office box so that bills did not arrive at the CT Page 15751 family home. Additionally, she told him that certain items were gifts from her family when she in fact had purchased the items. Ms. Klein testified that she spent money on toys and clothing for the couple's son, and furniture, antiques and decorative accessories for the family home. In 1999-2000, during a period of approximately 12 to 18 months, the Wife spent between $17,000 and $23,000 — with credit cards, loans from family and friends, removal of money from her son's bank account and the use of money earmarked for the payment of bills — to support her spending sprees. The Husband claimed to have no knowledge of the extent of the couple's debt until this action was filed. Additionally, Mr. Klein estimated $10,000 worth of furniture and decorations were observed by him coming into the family home but he does not know how the additional $7,000 to $13,000 was spent; no other explanation was offered by either party for the source of spending by the Wife. It is clear that the Wife was irresponsibly spending during the marriage and she deliberately hid that fact from the Husband. The excessive spending made it impossible for the couple to pay their monthly bills, which caused the Husband to work additional overtime and the Wife to feel neglected and spend more money.
Mr. Klein claimed that his Wife carried on affairs during the course of the marriage; however, the only evidence he offered regarding his Wife's relationships with other men consisted of pre-marital relationships, relationships that commenced after the Wife filed for divorce, and chance encounters with prior boyfriends during the marriage. None of the incidents cited by the Husband rise to the level of fault and the court finds the Husband's allegations unpersuasive.
Given the shared custody agreement and great disparity in earning capacity between the parties, the shared parenting deviation of the Child Support Guidelines does not apply (Section 46b-215a-3 Regulations of Connecticut State Agencies). The court computed child support using the detailed income information contained in Exhibit 3.
The Husband has requested that he be awarded ownership of the family home and pay 100% of the "marital debt." As a result he has deducted the following items from the equity in the home to determine what the Wife is entitled to:
Fair Market Value $250,000.00
Mortgage $140,722.91
Mastercard $ 7,739.00 CT Page 15752
Wachovia Card $ 7,920.00
Loan from Husband's Parents
to fund custody dispute $ 27,000.00
R.E Commission of 6% $ 15,000.00
Loan on Wife's Car $ 1,296.27
TOTAL $ 50,321.82
50% $ 25,160.91
In addition, the Husband contends that the Wife failed to comply with the parties' pendente lite stipulation dated November 6, 2000, in which she agreed to pay 1/3 of the household expenses. The Husband testified that he made all of the payments during this period of time and spent approximately $75,272.76 in the last two years and one month. However, he offered no documentary proof such as canceled checks to verify his claim. The Wife admitted that she had not paid 1/3 of the mortgage and utilities but claimed she purchased 100% of the minor child's clothing, toys, preschool costs, as well as purchasing food for the family home. Like the Husband, the Wife offered no documentary proof that she made these payments. The court has examined the expenses listed on the Husband's financial affidavit and after eliminating food, clothing, and cell phone charges, the Husband appears to have spent $610.41 per week for the mortgage, utilities, taxes, insurance, and debt service. Over the last 108.3 weeks he would have spent $66,107.40; the Wife's 1/3 share (without credit for the items she spent money for) of that amount is $22,035.80 — this would eliminate any equity she has in the marital home by the Husband's computations.
The court is not persuaded by the Husband's claim for the following reasons: it gives the Wife no credit for the household food, pet food, vet bills, child's clothing, unreimbursed medical expenses and the preschool expenses she paid for. Additionally, it makes her equally liable for the loan the Husband took from his parents to fund his legal fees for the custody contest. The Wife testified she paid her legal fees from her income; there is no reason why the Husband should be entitled to a contribution towards his legal fees from the Wife when she earns substantially less than he does. An examination of the Wife's financial affidavit shows that she spent approximately $141.00 per week for the items she testified she paid for. Over the past 108.3 weeks, she would be entitled to a credit of approximately $15,271.38 and would owe the CT Page 15753 Husband the sum of $6,764.42 for her failure to comply with the Pendente Lite financial orders.
Finally, as the bulk of the joint credit card debt was used to purchase furniture, decorative accessories and antiques for the family home, and which the Husband has requested an equitable share, he should be responsible for 50% of the joint credit card debt.
The court has computed the Wife's share of the equity in the family home as follows:
Fair Market Value $250,000.00
Mortgage $140,722.91
1/2 Mastercard $ 3,869.00
1/2 Wachovia Card $ 3,960.00
R.E Commission of 6% $ 15,000.00
100% Loan on Wife's Car $ 1,296.27
SUBTOTAL $ 85,151.82
50% $ 42,575.91
Minus Pendente Lite Arrearage $ 6,764.42
 TOTAL DUE WIFE $ 35,811.49
The Court finds that the residence requirements have been satisfied and that neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in entering the following orders, as well as the evidence, testimony and claims of law made by the parties:
ORDERS:
1. DISSOLUTION OF MARRIAGE
A decree dissolving the marriage on the grounds of irretrievable breakdown shall enter on December 16, 2002.
2. CUSTODY/VISITATION
CT Page 15754
The court finds that the agreement of the parties dated September 12, 2002 regarding a shared parenting plan is in the best interest of the minor child and it is incorporated herein by reference. The court shall retain jurisdiction over this matter for the next year to monitor progress of the shared parenting plan and maintain continuity of the court orders regarding custody and visitation.
3. CHILD SUPPORT
The Court finds it inappropriate and inequitable to apply the shared custody deviation from the Child Support Guidelines due to the Wife's caring for the child during the majority of his waking hours. Additionally, she has modified her job and work schedule so the child is in the care of a parent when not at preschool. This modification has had a negative impact on her income. Commencing December 16, 2002, the Husband shall pay the Wife, by contingent wage execution, the sum of $158.00 per week as child support and an $18.00 contribution towards the child's preschool tuition, for a total weekly payment of $176.00.
The parties shall exchange signed copies of their federal income tax returns (along with a copy of all forms W-2, 1099 and the like) each year by April 15th for as long as the child remains under the age of 18 years.
The obligations of support and maintenance of the minor child shall terminate when the child attains the age of eighteen (18) years, marries, dies, becomes employed full time being no longer enrolled in high school, or becomes otherwise emancipated, whichever occurs first. However, if the child reaches the age of eighteen (18) years, yet continues as a full time high school student and resides with the parents, the Husband shall continue to pay child support as specified above, until the child completes the twelfth (12) grade or attains the age of nineteen (19) years, whichever occurs first.
4. INCOME TAX EXEMPTION
The Husband shall take the child as a dependent for income tax purposes every year as long as his child support and unreimbursed medical expense payments are current.
5. ALIMONY
The Husband shall pay the Wife alimony in the amount of $175.00 per week for a period of three (3) years from the date of the dissolution; it CT Page 15755 shall be non-modifiable as to term unless the Wife dies, remarries, or cohabitates as defined by statute. This sum shall be paid by a contingent wage execution.
6. PERSONAL PROPERTY
If the parties cannot arrive at a mutually satisfactory division of personal property, the matter shall be referred to Family Relations in Middletown for mediation.
7. LIFE INSURANCE
The Husband shall continue to maintain his existing policy of life insurance as provided by his employer, with the child named as the beneficiary until the minor child has reached the age of majority.
The Husband shall provide the Wife proof of said insurance on an annual basis.
 8. PENSIONS, IRA ACCOUNTS, 401K ACCOUNTS AND DEFERRED COMPENSATION ACCOUNTS
The parties shall equally divide all pensions, IRA accounts, 401K accounts and deferred compensation accounts as listed on their respective financial affidavits by means of a Qualified Domestic Relations Order, if needed. The parties shall equally share in the cost of preparing the necessary documents. Each party shall be awarded joint and survivorship benefits to protect each party in the event of the other's death.
9. MEDICAL INSURANCE AND UNREIMBURSED MEDICALS — CHILD
The Husband shall maintain, at his sole expense, the present medical/dental insurance for the child, which is provided to the Husband through his employment. If said insurance is no longer available to the Husband through his employment at a reasonable cost, the parties shall equally share the cost of obtaining such medical and dental insurance. The Husband and Wife shall be jointly responsible for the first $100.00 per year of unreimbursed medical and dental expenses (including orthodontics). Thereafter, the parties shall equally split the cost of any unreimbursed medical, dental, optical, psychological, orthodontic and prescriptive drug expenses incurred on behalf of the minor child for as long as the Husband is obligated to pay child support for said child.
The provisions of 46b-84 (e) shall apply. CT Page 15756
10. MEDICAL INSURANCE — WIFE AND HUSBAND
The Husband shall be responsible for his own medical insurance coverage. The Wife shall be responsible for her own medical insurance. The Husband shall cooperate with the Wife in obtaining any COBRA benefits available to her. The court is not requiring the Husband to pay for the Wife's COBRA insurance because, through the court orders for child support and alimony, their incomes are comparable.
11. REAL PROPERTY
The Husband shall have 14 days to decide whether to refinance the family home, paying the Wife the sum of $35,811.49, or placing the home on the market for sale.
If the Husband decides to refinance the family home, the Wife shall, within 60 days of the date of the dissolution, Quit Claim to the Husband her interest in the marital property located at 10 Ridgebury Road, East Haddam, CT. In consideration thereof, the Husband shall pay to the Wife, immediately upon receipt of the Quit Claim Deed, the sum of $35,811.49.
If the Husband is unable or unwilling to refinance the family home, the home shall be listed for sale. The parties are to fully cooperate in the listing, showing and closing of the property. The parties shall immediately list the property for sale at an initial asking price of $262,500.00 with a MLS real estate agent familiar with real property values in the East Haddam area. If the parties cannot agree on a listing broker, terms of the listing or like details, the court shall decide on the listing broker and terms of the listing from a list of four brokers submitted by the parties. The parties shall accept the first bona fide offer within 5% of the asking price. If the home is not sold within 45 days of listing, the price shall be reduced by agreement of the parties after consultation with their real estate broker.
The Wife shall have 30 days from the date of this judgement within which to vacate the property. Thereafter, the Husband shall have sole and exclusive use of the premises until the sale of the property, and he shall be solely responsible for routine maintenance costs, taxes, insurance and utilities incurred during the period of exclusive use and shall not permit waste or damage to the property. The Husband shall leave the premises in broom-clean condition.
While occupying the house, the Husband shall be responsible for the payment of minor repairs or materials that cost less than $500.00; the parties shall split equally any costs to perform major or structural CT Page 15757 repairs costing more than $500.00.
After all expenses from the sale of the home (gross proceeds less the payoff of the first mortgage, realtor commissions, attorneys fees for sale, conveyance taxes and recording fees) and the payment in full of the joint credit card debt, the Husband shall be entitled to full credit for his payment of the Wife's car loan plus a credit of $6,764.42 for the pendente lite arrearage of the Wife; the remaining proceeds shall be equally divided.
The court shall retain jurisdiction over this paragraph for the next year to monitor the refinancing or sale of the family home and to maintain continuity of the court orders.
12. BANK ACCOUNTS
The Husband and Wife shall each keep as their sole property the bank accounts listed on their respective financial affidavits.
13. DIVISION OF DEBTS
Except as otherwise provided herein, the Husband shall be responsible for the debts on his financial affidavit and the Wife shall be responsible for the debts on her financial affidavit.
In the event the family home is refinanced, the Husband shall be solely liable and hold the Wife harmless and indemnified from the following debts because they have been deducted from the Wife's share of the equity in the family home:
Mastercard $ 7,739.00
Wachovia Card $ 7,920.00
Loan on Wife's Car $ 1,296.27
This indemnification is in lieu of additional alimony and shall not be dischargeable in bankruptcy.
14. ATTORNEY FEES
The parties shall each be solely responsible for their own attorney fees. Each of the parties shall pay their own outstanding fees of the Guardian Ad Litem within 30 days of the date of judgment. CT Page 15758
15. MOTOR VEHICLES
The Wife shall be entitled to sole ownership of the 1996 Nissan Maxima. The Wife shall hold the Husband indemnified and harmless from the taxes, registration and insurance for said vehicle. The Husband shall remain solely liable for the loan for this vehicle, the balance of which has been deducted from the Wife's share of the equity in the family home. The Husband's liability for the loan payment shall be in lieu of additional alimony and non-discharageable in bankruptcy. When the loan is paid in full, title shall be in the Wife's name alone.
The Husband shall be entitled to sole ownership of the 1988 Toyota Pickup truck he is currently driving. The Husband shall hold the Wife indemnified and harmless from the taxes, registration and insurance for said vehicle. The parties shall immediately complete and sign any paperwork necessary to change title on the above vehicles.
16. EDUCATIONAL SUPPORT:
Pursuant to Public Act 02-128, the parties shall be equally responsible for and shall pay the costs of four (4) years of undergraduate college education leading to a bachelor's degree for the parties' minor child under the following terms and conditions: (a) College education costs shall be defined as room and board, dues, tuition, fees, books, registration and application costs and reasonable travel expenses; (b) The parties shall cooperate with one another in providing any information or data required in connection with the application for scholarships; (c) While each party's obligation to pay the costs of a college education is limited to four (4) school years, the child shall be entitled to a total of (5) years from matriculation in which to attain his bachelor's degree provided, however, that each party's financial obligation shall not be enlarged beyond the costs had the child completed his education in four (4) school years; (d) The parties shall not be obligated under this agreement unless the child maintains a minimum 2.0 grade point average (4.0 scale) and is not under any suspension imposed by the institution. In the event, at the conclusion of a semester, the child's grade point average is below 2.0, then neither party would have the obligation to comply with the terms and conditions set forth within this category and their obligation would thereafter cease as it pertains to the college education expenses of the child for the remainder of that school year; (e) The obligation will not continue past the child's twenty-third (23rd) birthday; (f) In the event of a disagreement between the parties as to the college selection, it is expressly understood that the decision of the child as to the selection shall control; (g) The extent of each party's obligation beyond the accounts expended above shall not exceed CT Page 15759 one-half of the college education costs of a full-time in-state student attending the University of Connecticut at Storrs for the period indicated.
17. MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein.
By the Court,
 ___________________ Holly Abery-Wetstone, P.J.
CT Page 15760